UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 10-20612-CIV-GOLD/MCALILEY

JEANNETTE ABBO,

      Plaintiff,

vs.

REGIONS BANK,

      Defendant.

_____/

**OMNIBUS ORDER GRANTING MOTION TO DISMISS [DE 6] IN PART;**
**DENYING MOTION FOR JUDICIAL NOTICE [DE 5]; REQUIRING SUBMISSION**

**I.**    **Introduction**

THIS CAUSE is before the Court upon Defendant Regions Bank's Motion to Dismiss Plaintiff's Complaint **[DE 6]** and Motion for Judicial Notice **[DE 5]**.[1]  Plaintiff filed responses in opposition to both motions, **[DE 14]**; **[DE 15]**, and Defendant filed replies, **[DE 17]**; **[DE 18]**.  I have jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[2]  Having considered the relevant submissions, the applicable law, and being otherwise duly advised, I grant the Motion to Dismiss in part and deny the Motion for Judicial Notice as moot for the reasons that follow.

---

[1]

Defendant has also requested attorneys' fees pursuant to the Pledge Agreement at issue. **[DE 6, p. 18]**.

[2]

Neither party disputes that Plaintiff is a citizen of Florida, Defendant is a citizen of Alabama, and the amount in controversy exceeds $75,000, exclusive of interest and costs. **[DE 1, pp. 1-2]**.

## II.    Factual and Procedural Background[3]

Plaintiff Jeanette Abbo ("Plaintiff" or "J.Abbo") is the wife of Edward Abbo ("E. Abbo"); the Abbos are currently involved in  marriage dissolution proceedings in Broward County Circuit Court **[DE 1, pp. 4, 10, 18]**.  On or around December 13, 2006, E. Abbo, J. Abbo, and others entered into a number of agreements with Defendant Regions Bank ("Defendant") regarding a loan extended from Defendant to Prime Investors and Developers, Inc. ("Prime").  *Id.* at 5-6.  As part of the transaction, Prime signed a $15,000,000 Promissory Note ("the Original Note") in favor of Defendant, while Plaintiff, E. Abbo, and five other members of the Abbo family executed an Assignment and Pledge Agreement ("Pledge Agreement") pursuant to which Plaintiff and E. Abbo jointly granted Defendant a security interest in an account at Morgan Keegan & Company ("the Morgan Keegan Account") as collateral[4] to secure the loan "Obligations," which are defined in the "most comprehensive sense" on page two of the Pledge Agreement as:

> **[A]ll indebtedness**, obligations, and liabilities **of the Borrower to [Defendant]** whether direct or indirect, absolute or contingent, **due or to become due, now existing** or hereafter arising under or in respect of this

---

[3]

For purposes of a motion to dismiss, I take as true all factual allegations in the operative complaint and limit my consideration to the four corners of the complaint and any documents referred to in the complaint which are central to the claim. *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  To the extent the central documents contradict the general and conclusory allegations of the pleading, the documents govern.  *See Griffin*, 496 F.3d at at 1206.

[4]

Two other Morgan Keegan accounts identified in Schedule A to the Pledge Agreement were also pledged pursuant to the Pledge Agreement; those accounts, however, were pledged by other members of the Abbo family (i.e., Fred, Eva, Larry and Susana) and are not at issue. *See* **[DE 8]**.

Agreement, the Control Agreement[5] . . . or any other agreement between the Pledgor[6] and [Defendant] relating to the loan . . . "

*Id.* at 5-6; **[DE 8]** (emphasis added).  The Pledge Agreement further provides in Section 2(f) that "the security interest . . . shall not terminate and the Secured Party shall not be required to return the Collateral . . . or to terminate its security interest therein unless and until . . . the Obligations have been fully paid or performed" and two other conditions have been met.[7]  **[DE 8]**.  In addition to the aforementioned pledge of collateral, the Original Note was also guaranteed by Fred Abbo, Larry Abbo, and E. Abbo ("the Guarantors"). **[DE 8]**.

On January 5, 2008, the Original Note matured, **[DE 1, p. 7]**, and on April 5, 2008 – after Plaintiff and E. Abbo had become involved in dissolution proceedings and were not living together – Prime executed a Renewal Master Promissory Note that "renew[ed] and replac[ed]" the Original Note ("the Renewal Note"). **[DE 8]**.  As with the Original Note,

---

[5]

On January 7, 2007, an Account Control Agreement was entered into by Plaintiff, E. Abbo, Defendant, and Morgan Keegan & Company "to perfect [Defendant's] security interest in [the pledged account]."  **[DE 8]**.

[6]

Section 8(h) of the Pledge Agreement specifically states that the term "Pledgor as used in [the Pledge Agreement] . . . refer[s] to all individuals executing this Agreement, jointly and severally . . . " **[DE 8]**.  Plaintiff argues that Pledgor is contradictorily defined as Prime in Paragraph 3(g), which is a general provision providing a name and mailing address where the Pledgor can receive notices or correspondence.  I reject this argument, for "[a] contract provision specifically dealing with a particular subject controls over a general provision dealing with that same subject."  *Idearc Media Corp. v. M.R. Friedman & G.A. Friedman, P.A.*, 985 So.2d 1159, 1161 (Fla. 3d DCA 2008).

[7]

The two other conditions are: (1) that "the obligations of all parties to the Loan Documents have been fully paid or performed;" and (2) that "the Pledgor has reimbursed the [Defendant] for any expenses of returning the Collateral and filing any termination statements and other instruments as are required to be filed . . . ." **[DE 8]**.

Plaintiff did not sign the Renewal Note. **[DE 1, p. 10]**.  The Renewal Note states that it is "a renewal of [the Original Note] . . . [and] is not intended to be a novation and shall not constitute a novation."  **[DE 8]**.  Around the same time the Renewal Note was executed, a "Modification and Extension Agreement" ("the Guaranty Extension") was also executed by the Guarantors, which, *inter alia*, expressly applied the terms of each Guarantor's original guaranty to the Renewal Note.  **[DE 1, p. 7]**; **[DE 8]**.  While Plaintiff, who was not a Guarantor, did not execute or consent to the Guaranty Extension, the Guaranty Extension does refer to Plaintiff and provides that it "does not constitute a release by [Defendant] of [Plaintiff's] liability to [Defendant] . . . or otherwise limit or affect in any way . . . the enforceability of the Pledge Agreement and the Account Control Agreements and their continuing application to the Renewal Note."  **[DE 8]**.[8]

According to Plaintiff, "many . . . of the obligations of Prime [] and E. Abbo are going into default" and Plaintiff is concerned that the Morgan Keenan Account may be repossessed by Defendant, leaving Plaintiff with "no viable cause of action to recover for the damages [because] E. Abbo has transferred all of his assets with significant value to a third party . . . ." **[DE 1, p. 11]**.  As a result of these concerns, Plaintiff filed the instant two-count complaint.  The first count requests a declaration that the Pledge Agreement "is of no force and effect with relation [to the Renewal Note]" and that "any claims of [Defendant] against the Morgan Keegan Account be released," *id.* at 13, while the second count asserts that Defendant breached the Pledge Agreement by failing to release its

---

[8]
When Plaintiff's then-attorney learned of the Guaranty Extension, correspondence was sent to Defendant notifying Defendant of Plaintiff's dispute with the alleged continuing nature of the Pledge and Account Control Agreements.  **[DE 1, p. 8]**.

security interest in the Morgan Keegan Account, which Plaintiff asserts was extinguished "upon the expiration of the term of the [Original Note]" – i.e., January 5, 2008.  *Id.* at 14-15.

## III.   Standard of Review

For the purposes of deciding a motion to dismiss, my review is limited to the four corners of the complaint and any documents referred to in the complaint that are central to the claims at issue.  *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  Thus, only the contents of Plaintiff's Complaint and the central documents will be considered.

In determining whether to grant a motion to dismiss, I must accept all the *factual allegations*[9] in the complaint as true and evaluate all reasonable inferences derived from those facts in the light most favorable to the Plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)*; Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' "  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1959 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103 (1957)).  "Of course, 'a formulaic recitation of the elements of a cause of action will not do.'"  *Watts v. Fla. Int'l. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) *(*quoting *Twombly*, 550 U.S. at 555).  "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is

---

[9] Legal conclusions, on the other hand, need not be accepted as true.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

improbable, the factual allegations must be enough to raise a right to relief above the speculative level." *Watts*, 495 F.3d at 1295 (citing *Twombly*, 550 U.S. at 555) (internal quotations omitted)).  In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

## IV.   Analysis

### A.   Breach of Contract

I first address Plaintiff's breach of contract claim, which must be dismissed for failure to state a claim.  Under Florida law,[10] a Plaintiff asserting a cause of action for breach of contract must "adequately ple[a]d" the following elements to state a claim: "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008) (citations omitted).  While Plaintiff has adequately alleged facts supporting the first and third essential elements of a breach of contract claim,

---

[10]

I apply Florida law pursuant to the choice-of-law provision contained in Section 8(e) of the Pledge Agreement, which states that the "[Pledge] Agreement shall be governed by and construed in accordance with the laws of Florida." **[DE 8]**.  In determining and applying the law of Florida, I "must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982) (citations omitted).

Plaintiff has not sufficiently pled a material breach, as she has failed to identify a contractual provision that Defendant purportedly violated. *See Gentry v. Harborage Cottages-Stuart*, *LLLP*, 2008 WL 1803637, *3 (S.D. Fla. Aug. 21, 2008) (applying Florida law and concluding that Plaintiffs did not state a claim for breach of contract because Plaintiff's "allegations fail to provide sufficient reference to a specific term of the [contract] that was breached"); *Yai v. Progressive Bayside Ins. Co.,* 2009 WL 383362, *7 - *8 (N.D. Ga. Feb. 12, 2009) (dismissing breach of contract claim without prejudice for failure to state a claim because Plaintiff did not point to the specific provisions of the contract that were allegedly breached) (citing *Adkins v. Cagle Foods JV, LLC,* 411 F.3d 1320, 1327 (11th Cir. 2005) (concluding that breach of contract claim failed because plaintiffs could not identify any contractual provision breached by defendant)); *London v. Fieldale Farms Corp.,* 410 F.3d 1295, 1306 (11th Cir. 2005) (concluding that defendant was entitled to judgment as a matter of law on breach of contract claim where "[Plaintiffs] did not support their claim with any reference to a specific contract provision that they allege [defendants] breached"). Accordingly, Plaintiff's breach of contract claim is must be dismissed without prejudice. If Plaintiff chooses amend its breach of contract claim, it must point to specific contractual obligations that Defendant allegedly breached and plead sufficient facts supporting the reasonable inference of a material breach.

### B.   Declaratory Relief

I now turn to Plaintiff's second claim, which requests declaratory relief pursuant to Florida's Declaratory Judgment Act, Chapter 86, Florida Statutes. The purpose of Florida's Declaratory Judgments Act is to "settle and to afford relief from insecurity and uncertainty with respect to rights, status and other equitable or legal relations." *Lutz v. Protective Life*

7

*Ins. Co.*, 951 So. 2d 884, 888-89 (Fla 4th DCA 2007).  Because such insecurities and uncertainties often arise as a result of contract-related disputes, the statute expressly addresses declarations regarding contracts.  Specifically, Section 86.031 provides that "[a] contract may be construed either before or after there has been a breach of it."

In determining whether a complaint states a cause of action for declaratory relief pursuant to Chapter 86, "[t]he test of sufficiency of a complaint in such a proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all."  *Lutz*, 951 So. 2d at 888-89 (citation omitted).  Whether a Plaintiff is entitled to a declaration requires trial courts to "inquire[] whether or not the party seeking a declaration shows that he is in doubt or is uncertain as to existence or non-existence of some right, status, immunity, power or privilege and has an actual, practical and present need for a declaration."  *Id.* at 889.  To satisfy this standard, Plaintiff must adequately allege that:

> [T]here is a bona fide, actual, present practical need for declaration; that the declaration should deal with present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of complaining party is dependent on fact or law applicable to facts; that there is some person or persons who have, or reasonably may have actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court by proper process or class representation and that the relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

*Palumbo v. Moore*, 777 So.2d 1177, 1178 (Fla. 5th DCA 2001) (quoting *May v. Holley*, 59 So. 2d 636, 639 (Fla. 1952)).  Thus, "where the ripening seeds of controversy make litigation in the immediate future appear unavoidable," a party is entitled to declaratory

8

relief pursuant to Florida's Declaratory Judgment Act, a statute which, by its own terms, is to be "liberally administered and construed." *Orange County v. Expedia, Inc.*, 985 So. 2d 622, 625-26 (Fla. 5th DCA 2008) (quoting *South Riverwalk Inv., LLC v. City of Fort Lauderdale*, 934 So.2d 620, 622 (Fla. 4th DCA 2006)). Having reviewed Plaintiff's complaint, I conclude that Plaintiff has adequately alleged that she "is in doubt or is uncertain as to [the] existence or non-existence of [an enforceable security interest in the Morgan Keegan Account] and has an actual, practical and present need for a declaration" given that "many . . . of the obligations of Prime [] and E. Abbo are going into default." *Lutz*, 951 So. 2d at 89. Accordingly, Plaintiff has stated a claim for declaratory relief pursuant to Chapter 86.[11]

---

[11]

    I emphasize that my decision to allow Plaintiff's declaratory relief claim to proceed should not be construed as an endorsement of Plaintiff's position regarding the validity and enforceability of Defendant's security interest in the Morgan Keegan Account. To the contrary, a review of the relevant documents and the applicable law indicates that Defendant's position is well-founded. Specifically, I note that Section 2(f) the Pledge Agreement provides that "the security interest . . . shall not terminate and [Defendant] shall not be required to return the Collateral . . . or to terminate its security interest therein unless and until . . . the Obligations have been fully paid or performed." **[DE 8]**. Plaintiff argues that renewal of the loan extinguished Plaintiff's initial pledge because "the April 2008 Renewal Note replace[d] the original note" and thus discharged "the Obligations" defined in the Pledge Agreement. **[DE 1, p. 7]**. This argument appears to ignore the well-settled principle "that a renewal note does not operate as a payment or discharge of the note in renewal of which it is given unless there is an express agreement between the parties to that effect." *Taines v. Capital City First Nat. Bank*, 344 So. 2d 273, 277 (Fla. 1st DCA 1977) (citation omitted). As the *Taines* court noted, the fact that a renewal note extends the original payment schedule, or that "the terms of the original obligation [have been] altered" does not "extinguish the original debt." *Id.* at 277 (citations omitted). This is especially true where the "new note[] [is] marked . . . as [a] renewal note[] and [the lender] retained the original note[]," as these are "further indication[s] of intent not to extinguish the underlying obligation." *Id.* (quoting *Northwest Acceptance Corp. v. Heinicke Instrument Co.*, 441 F.2d 887, 891 (5th Cir. 1971)).

    Plaintiff defends her position by arguing that the pledge was extinguished because an accommodation endorser "is discharged when the holder grants to the one primarily liable a valid and binding extension without his consent." **[DE 15, p. 11]** (citing *Fort Pierce Bank & Trust*

**V.     Conclusion**

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that:

1.     Defendant's Motion to Dismiss **[DE 6]** is GRANTED IN PART.

2.     Count I of the Complaint will not be dismissed.

3.     Count II of the Complaint is dismissed WITHOUT PREJUDICE.

4.     Plaintiff shall have **until and including Friday, May 7, 2010 at 5:00 p.m.** to amend Count II of the Complaint.

5.     If Plaintiff does not amend or voluntarily dismiss its Complaint, Defendant shall Answer Paragraphs 1 through 54 of Plaintiff's Complaint **no later than Wednesday, May 19, 2010 at 5:00 p.m.**

6.     If Defendant seeks an award of attorneys' fees, it must file an appropriate Motion for Attorneys' Fees in accordance with S.D. Fla. L.R. 7.3(B).

7.     Defendant's Motion for Judicial Notice **[DE 5]** is DENIED WITHOUT PREJUDICE AS MOOT.

8.     The parties are ORDERED to comply with **[DE 16]** no later than **Wednesday, May 5, 2010 at 5:00 p.m.**. *See* **[DE 16, p. 1]**.

---

*v. Sewall*, 152 So. 617, 618 (Fla. 1934)).  This argument is unpersuasive for a number of reasons.  First, the rights and liabilities of accommodation parties to negotiable instruments are now governed by Article III of the Florida Commercial Code, not the common law.  *See* Fla. Stat. § § 673.1021(1), 673.6051.  More importantly, however, is the fact that Plaintiff is not an accommodation endorser that incurred liability on the Original Note.  *See* Fla. Stat.  § 673.4191; *see also* James J. White & Robert S. Summers, Uniform Commercial Code § 16-10, at 173 (5th ed. 2000) (defining accommodation party and describing rights and liabilities of accommodation parties).  Thus, the rules governing the rights and liabilities of accommodation parties, *see, e.g.,* Fla. Stat. § 673.6051, do not control Plaintiff's claims.  In light of the foregoing, I urge Plaintiff's counsel to very carefully review the applicable law as well as Federal Rule of Civil Procedure 11(b), and to discuss the viability of Plaintiff's position with his client, especially given the attorneys' fees provision found at Section 6(b)(a) of the Pledge Agreement.

10

DONE and ORDERED IN CHAMBERS at Miami, Florida this <u>20th</u> day of April,

2010.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge Chris M. McAliley
Counsel of record